## Staunton.

ATLANTIC TRUST AND DEPOSIT CO. v. UNION TRUST AND TITLE CORPORATION AND OTHERS.

September 9, 1909.

1. PRINCIPAL AND SURETY—*Misrepresentations to Surety—Knowledge of Creditor.*—A person proposing to become surety for the conduct or contracts of another has the right to be treated with perfect good faith. The law does not as a rule, however, require that the party taking the surety shall seek him out and explain to him the nature and extent of the obligation, nor does it hold him responsible for fraudulent representations made to the surety by the principal, or by a third party without his knowledge or consent. But where, with the knowledge or consent of the creditor, there is a misrepresentation to the surety with regard to any material fact which, if he had known, he might not have entered into the undertaking of suretyship, it will thereby be rendered invalid, and the surety discharged from his liabilities. If the contract between the creditor and the principal debtor is less advantageous to the principal than is set forth in the written contract by which the principal and surety become bound to the creditor, and this fact is known to the creditor, but is unknown to the surety, the latter is not bound.

2. PRINCIPAL AND SURETY—*False Representations to Surety by Creditor.* If the creditor undertakes to describe to a surety the terms of a loan to his principal, and his representations are material and false, the surety cannot be held liable unless he had notice of the character of the loan; and whether or not he had such notice is a question for the jury.

3. PRINCIPAL AND SURETY.—*Subsequent Agreement Between Creditor and Principal—Discharge of Surety.*—After a loan has been negotiated, and the debtor and his surety have given their obligation to the creditor, a subsequent agreement between the creditor and the principal debtor entered into for their own convenience, but without consideration, that the sum loaned shall only be gotten from the creditor as the debtor needs it for a special purpose, is no such binding legal contract, changing the character of the

surety's undertaking as will relieve him from liability on his obligation.   The agreement is without consideration, and the principal may demand and receive the money loaned at once.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action of debt.   Judgment for the plaintiff.   Defendant assigns error.

*Reversed.*

The opinion states the case.

*Jeffries, Wolcott, Wolcott & Lankford* and *Floyd Hughes,* for the plaintiff in error.

*Thos. H. Willcox, E. H. Bilisoly, Richard D. Cooke* and *Walter H. Taylor,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The Atlantic Trust and Deposit Company, plaintiff in error, is a surety company against which a judgment was rendered in favor of the Union Trust and Title Corporation upon a penal bond in which the Victoria Hotel Corporation was principal and the plaintiff in error was surety.

The principal question involved in the case is whether or not the surety company has been discharged from its liability by reason of misrepresentations made by, or with the knowledge and assent of, the obligee in the bond as to the contract the performance of which the surety had in part guaranteed.

At the time of the execution of the bond the Victoria Hotel Corporation was constructing a hotel in the city of Norfolk. About the first of February, 1907, as the building was nearing completion and the Hotel Corporation needed money to pay for its construction and for other purposes, it sought a loan of seventy thousand dollars from the Union Trust and Title Corporation.

The terms of the contract between the lending and borrow-

ing companies are evidenced for the most part by the following correspondence:

"January 29, 1907.

"Union Trust and Title Corporation,

"Norfolk, Virginia.

"Gentlemen:

"We hereby make application for a loan of $70,000.00, with interest at 6 *per cent.,* payable semi-annually, for one year from February 1, 1907.

"We offer as security for the same a first mortgage on the land and hotel building of the corporation, situated on the south side of Main street, between Loyall's and Marsden's lanes, fronting on Main street about 55 feet, and running back about 120 feet.

"We offer you as a commission the sum of $1,400 cash. We obligate to furnish you a guarantee, with surety satisfactory to your corporation, that the building will be completed, according to present plans, by April 15, 1907, free from all liens and claims.

"We further obligate to turn over to you, not later than December 1, 1907, a cash sum of $15,000, to be held by you as a sinking fund for the maturity of the loan.

"There is now existing on this property a deed of trust to Walter H. Taylor and Alan G. Burrow, trustees, to secure one note of $25,000, which is held by the Victoria Bank and Trust Company, and which matures about June 15, 1907. This note will have to be arranged for by you.

"Inasmuch as our stockholders' meeting authorizing the bond issue in the matter of the $70,000 will not be held until February 15, 1907, and inasmuch as it is necessary for us to have at least $8,000 immediately on account of construction, we request that you accept this corporation's note dated January 30, 1907, and due February 15, 1907, in favor of, and endorsed by, Burruss Corprew, Geo. T. Banks, C. N. Whitehurst, A. C. Omohundro, W. C. Cobb and Alan G. Burrow.

"We agree to take out fire insurance in the amount of $70,-000, loss, if any, payable to Mr. Walter H. Taylor, trustee, as his interest may appear.

"It is understood that we are to pay all recording fees, and the expense of your general counsel in the preparation of all documents.

"Yours very truly,
"VICTORIA HOTEL CORPORATION,
"By ALAN G. BURROW, Secretary."

"February 1, 1907.

"Alan G. Burrow, Esq., Secretary,
"Victoria Hotel Corporation,
"Norfolk, Va.

"Dear Sir:

"In reply to your letter of January 29, 1907, making application for a loan of $70,000, upon the terms and conditions stated in said letter, with the subsequent addition of the names of Ferguson & Calrow, as endorsers of the eight thousand dollar note mentioned in said letter, I now beg to advise that said letter of application has gone before our several committees, and has by them been approved, and I am authorized to pay to your company the $8,000 therein mentioned.

"There is a condition which our executive committee desires to be stipulated in their acceptance of your proposition, viz.: That the $15,000 sinking fund shall be paid as follows: $5,000 not later than October 1, 1907; $5,000 not later than November 1, 1907; and $5,000 not later than December 1, 1907.

"It was understood with you that these conditions would be acceptable to your corporation, and that the minutes of your stockholders' meeting, and the minutes of the subsequent meeting of your board of directors, shall embrace said change.

"Yours very truly,
"R. W. GAMBLE, Secretary."

The time for the completion of the building and the removal of the liens thereon, stated in the letter of the hotel corporation, was changed from April 15 to May 1, 1907.

On the 15th of February, 1907, the bond sued on was executed, which, omitting the formal portions, is as follows:

"The condition of the above obligation is such, that

"Whereas, the Union Trust and Title Corporation has agreed to loan to the Victoria Hotel Corporation the sum of seventy thousand dollars ($70,000.00) evidenced by seventy (70) bonds of one thousand dollars ($1,000.00) each, payable one year after date, and dated the first day of February, 1907, and bearing interest from date at the rate of six *per centum per annum,* payable semi-annually, the interest being evidenced by coupons attached to said bonds, all of the said bonds and interest to be secured by a deed of trust upon the property of the Victoria Hotel Corporation, situated on the south side of Main street in the city of Norfolk, Virginia, between Loyall's lane and Marsden's lane, and having a frontage on Main street of 56.7 feet, more or less, with a depth on Loyall's lane of 148.6 feet and a depth on Marsden's lane of 118.6 feet and a width in the rear of 52.84 feet, more or less; and

"Whereas, one of the conditions of the said loan from the Union Trust and Title Corporation to the said Victoria Hotel Corporation is that a building will be erected on said property by the Victoria Hotel Corporation, and completed on or before the first day of May, 1907, at a cost of not less than $90,000.00, and in substantial compliance with the plans and specifications of Messrs. Ferguson & Calrow, under which the same is being erected, and shall be free from all material, labor and mechanic's liens.

"Now, therefore, if the building as above described shall be erected and completed by the Victoria Hotel Corporation at a cost of about $90,000.00, on or before the 1st day of May, 1907, and shall be free from all material, labor and mechanic's liens,

then this obligation shall be void, otherwise to remain in full force and virtue."

One of the contentions of the plaintiff in error is that the agreement or contract described or recited in the bond is materially different from the contract between the lending and borrowing companies, in several particulars. The bond recites that the lender had agreed to loan to the borrower the sum of $70,000 for *one year with interest at the rate of six per cent. per annum, payable semi-annually,* when in fact the contract of loan provided for the payment of six *per cent.* interest for the use of the money loaned, for a commission of $1,400 in cash for making the loan, and for the repayment of $15,000 of the money loaned, before the expiration of the year for which it was loaned, and $8,000 of the $70,000 to be loaned had already been secured by the hotel corporation.

The legal effect of the actual contract between the parties was not a loan of $70,000 for one year at six *per cent.* interest, payable semi-annually, but a loan at eight *per cent.* interest (for the commission of $1,400 was nothing more than interest—3 Parsons on Contracts, 106-108, 113-115; *Brakeley v. Tuttle,* 3 W. Va. 86, 130-137; *Meem v. Dulaney,* 88 Va. 674), one-fourth of which was payable when the loan was made, and for a repayment of more than one-fifth of the money loaned several months before the expiration of the year for which the loan was made, and the $70,000 to be loaned embraced $8,000 for which the hotel corporation was then indebted.

The contract for the loan and that recited in the penal bond was materially different, and the lender knew this, for the bond was prepared by its counsel. It does not appear that the plaintiff in error knew that the contract between the lender and borrower was different from that recited in the bond, and such knowledge is denied by it.

The undertaking of the surety was that the hotel building should be erected and completed by the hotel corporation at a cost of about $90,000 on or before the 1st day of May follow-

ing, and should be free from all material, labor and mechanic's liens. The effect of retaining the $1,400 out of the money loaned, and of only delivering in fact $60,600 instead of $70,000, was to reduce the fund which the surety might reasonably suppose would go to the completion of the building and the removal of the liens for which the surety had made himself responsible. The contract was, therefore, obviously less advantageous to the principal than it appeared from the recitals in the bond.

It is well settled that a person proposing to become surety for the conduct or contracts of another has a right to be treated with perfect good faith. The law does not as a rule, however, require that the party taking the surety shall seek out the surety and explain to him the nature and extent of the obligation, nor does it hold him responsible for fraudulent misrepresentations made to the surety by the principal, or by a third party, unless such misrepresentations are made with his knowledge or consent. See *Hamilton* v. *Wilson,* 11 Clark & Fin. 109; *Atlas Bank* v. *Brownell,* 9 R. I. 168, 11 Am. Rep. 231; *Griffith* v. *Reynolds,* 4 Gratt. 46, 49-50; *Magee* v. *Manhattan L. Ins. Co.,* 92 U. S. 93, 23 L. Ed. 699; *Warren* v. *Branch,* 15 W. Va. 21; Brandt on Suretyship, sec. 447; Bayless on Sureties, 293; Kerr on Fraud and Mistake, 122-3; 1 Chitty on Contracts, pp. 772-3.

But it seems to be equally well settled that where, with the knowledge or assent of the creditor, there is a misrepresentation to the surety with regard to any material fact, which, if he had known, he might not have entered into the undertaking of suretyship, it will thereby be rendered invalid and the surety discharged from his liabilities.

Brandt on Suretyship and Guaranty, sec. 447 (3d ed.), states the law on that subject as follows: "If any material part of the transaction between the creditor and his debtor is by the creditor, or with his knowledge or consent, misrepresented to the surety, the misrepresentation being such that but for the same having been made, either the suretyship would not have

been entered into at all, or, being entered into, the extent of the surety's liability might be thereby increased, the surety is in such case generally held to be not bound by his obligation."

In 1 Chitty on Contracts (11th Am. ed.), pp. 772-3, it is said that "although a surety is not of necessity entitled to receive, without inquiry, from a party to whom he is about to bind himself a full disclosure of all dealings between the principal and that party, still if any material part of the transaction is, with the knowledge of the creditor, misrepresented to the surety, or if the creditor fraudulently conceal from the surety any circumstance within his knowledge, which it is material for the surety to know, although such concealment be not with a view to any advantage to himself, the guaranty will be void."

In the note to *Rees* v. *Berrington,* 2 White & Tudors Lead. Cases, Pt. 2, p. 1867, after stating that the intimate relation between the parties to the contract of suretyship requires that perfect good faith should be adhered to, the rule is laid down as follows: "Wherever, therefore, with the knowledge or assent of the creditor, there is any misrepresentation to, or even concealment from, the surety, with regard to any material fact which had he been aware of he might not have entered into the contract of suretyship, it will thereby be rendered invalid, and the surety will be discharged from his liabilities."

To the same effect, substantially, are 3 Min. Inst. 186; 2 Am. Lead. Cas., 478-479; Bayless, p. 214; DeColyer, p. 374, in their books on Sureties and Guaranties.

The doctrine as announced by the text-writers seems to be fully sustained by the decided cases.

In the case of *Stone* v. *Compton,* 5 Bingham (N. C.) 142, the recitals of the various instruments read at the execution of the note were so worded as to convey the impression that the principal would actually receive the whole amount named, whereas a considerable portion of it was to be retained on account of an antecedent debt. It was held in that case that this

was a fraud in law which released the surety from liability on the note.

In *Willis* v. *Willis,* 17 Sim. 218, one Willis, in consideration of a conveyance to his principal of certain property free from all except certain specified incumbrances, became surety. It turned out that the property was subject to another incumbrance not specified, which the grantor had at the time forgotten, and this incumbrance was unknown to the surety. This misrepresentation it was held rendered the contract invalid as to the surety.

See, also, *Graves* v. *Lebanon Nat. Bank,* 10 Bush. (Ky.) 23, 19 Am. Rep. 50; *Fassnacht* v. *Ensing, &c., Co.,* 18 Ind. App. 80, 46 N. E. 480, 63 Am. St. Rep. 322, and n. 327 where many cases are cited; *Prelcock* v. *Bishop,* 3 Barn. & Cress. 197; *Warren* v. *Branch,* 15 W. Va. 21, 26-27; *Doughty* v. *Savage,* 28 Conn. 146, 155.

The creditor in this case was under no obligation to inform the surety of the character of the loan which it proposed to make to the hotel corporation, but if it did undertake to describe its terms, it was bound to represent them as they were in all respects material to the surety. The creditor having undertaken to describe the terms of the loan, and its representations as to them being material and false, the surety cannot be held liable, unless it had notice of the true character of the loan. Whether or not it had such notice was a question for the jury, and the court erred in not submitting that question to them.

It is further insisted by the plaintiff in error that it has been released from its liability on the bond sued on, because there was an agreement between the creditor and the hotel corporation that the money loaned was only to be gotten from the creditor as the hotel corporation needed it for the construction of the building, and that there was still in the hands of the creditor over seven thousand dollars of that money on the 1st of May, 1907, when the bond sued on was forfeited.

This agreement was a mere arrangement between the cred-

itor and the hotel corporation for their own convenience. It was without consideration, and there was nothing in it to prevent the hotel corporation from demanding and receiving the money loaned at once; certainly it was no such binding legal contract changing the character of the surety's undertaking as would relieve it from liability on the bond.

Without discussing specially the other grounds relied on to discharge the surety from liability, it is sufficient to say that neither of them are sufficient for that purpose, and the trial court properly so held.

The judgment complained of must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*