[No. 13711. Department Two. May 5, 1917.]

J. E. OSBORNE *et al.*, *Respondents*, v. CHICAGO BONDING & SURETY COMPANY, *Appellant.*[1]

PRINCIPAL AND SURETY—LIABILITY — RELEASE — REPRESENTATIONS. A surety company, giving a bond to insure the completion of a building upon property sold by the principal to a purchaser under an agreement that the principal would complete the building, is not released by the fact that the represented consideration for the property was not to be paid for all in cash, where no representations were made as to the method of payments, and the surety had no lien against the purchase price and was in no way interested therein.

Appeal from a judgment of the superior court for King county, Ronald, J., entered January 17, 1916, in favor of the plaintiffs, in an action on contract, tried to the court. Affirmed.

*William E. Froude* and *Higgins & Hughes* (*Hyman Zettler*, of counsel), for appellant.

*Robert F. Booth* and *Peters & Powell*, for respondents.

MOUNT, J.—This action was brought to recover upon a surety bond. The plaintiffs had judgment below, and the defendant bonding company has appealed.

The facts are substantially as follows:. In September of 1914, Robert Knipe agreed to sell two lots in Seattle to the respondent Mr. Osborne for the sum of $40,000. An apartment house was being constructed upon one of these lots. The house was not completed, and Mr. Knipe agreed that he would finish the building and furnish a surety bond for the completion of the house according to the plans and specifications. The contract between Mr. Knipe and Mr. Osborne provided that the $40,000 should be paid, $5,000 in cash, $5,000 by second mortgage, upon the property, the assumption by Mr. Osborne of a first mortgage for $15,000, and the balance by a deed to certain described real estate. When Mr.

[1]Reported in 164 Pac. 742.

Knipe applied to the appellant bonding company for a bond, he stated that the consideration was $40,000. No statement appears to have been made as to how the money was to be paid. The surety bond was prepared by Mr. Osborne's attorney. It was for $15,000. The condition of the bond, as stated therein, was as follows:

"The condition of this obligation is such that Whereas the said J. E. Osborne and Edith May Osborne, his wife, have purchased from the said Robert T. Knipe, for the sum of forty thousand dollars ($40,000), that certain property in the city of Seattle, more particularly described as lot eight (8), block thirteen (13) Laws addition to the city of Seattle, together with the building now being erected thereon, and, whereas, the said Robert T. Knipe is constructing said building upon said property and whereas said building is not as yet fully completed and whereas, said Robert T. Knipe has agreed to fully complete said building according to the original specifications and has agreed to pay and discharge all bills for labor and material which have been incurred, or which shall be incurred against said property on said building, and to complete the same free and clear of all liens of every kind and nature, and whereas, said Robert T. Knipe has further agreed to complete said building by the first day of November, 1914.

"Now Therefore, If the said Robert T. Knipe shall well and truly save and hold harmless the said J. E. Osborne and Edith May Osborne, his wife, from any and all claims and liens against said premises above described by the reason of the construction of said building upon the property . . . then this obligation to be void . . ."

Thereafter the building was completed, but Mr. Knipe failed to pay certain laborers and materialmen. Liens were filed against the building, and Mr. Osborne was required to pay the same, to the amount of $8,000. This action was brought upon the bond for that sum.

No question is made by the appellant about the amount of the liens which the respondents were compelled to pay. The sole contention of the appellant is that the surety is not liable because the bond recites that the consideration for the pur-

chase of the property was $40,000, when, in fact, the purchase price of the property was not $40,000 in cash, but that this sum was to be paid partly in cash, partly by mortgage, and partly by other property. It is strenuously argued by the appellant that the consideration passing from Mr. Osborne to Mr. Knipe was not a cash consideration, as represented to the surety, but was a property consideration; and because the method of payment was not stated to the surety, the surety was, in effect, defrauded and led to enter into a contract which, if the facts had been stated, it might have refused.

The appellant relies upon the case of *Atlantic Trust & Deposit Co. v. Union Trust & Title Corporation,* 110 Va. 286, 67 S. E. 182, 135 Am. St. 937. In that case, a bond, much the same as in this case, was given to complete the performance of a building contract. In that case, it was represented that a loan of $70,000, bearing interest at six per cent, was made for the purpose of completing the building, when, in fact, the loan was for $60,600, and was at eight per cent. It was held in that case that the surety company was not liable because the contract was not properly represented to the surety company, and that the representation that the loan was for $70,000 was, in substance, a fraud upon the surety company. In that case, the borrowed money was for the purpose of completing the building, and, of course, the surety company had a right to look to the whole of that fund to complete the building for its benefit. In the case we are now considering, the transaction was fully completed. The surety company did not reserve any right to any of the purchase money which was being paid by Mr. Osborne to Mr. Knipe, and whether the payment was in cash or property was of no interest to the surety company. The bond recites that the consideration was $40,000. Mr. Knipe and the respondent, Mr. Osborne, had agreed upon that consideration. The payment was not to be in cash, but it was to be partly cash, partly by a mortgage upon the property, and the balance by a

transfer of real estate.  We are at a loss to understand in what way the surety company had any interest in the method of payment, because no lien was reserved by the surety company against the purchase price.  The purchase price was to be paid by Mr. Osborne to Mr. Knipe, and was paid and the transaction closed at the time the bond was delivered to Mr. Osborne.  There is no showing that Mr. Osborne was required to account in any way to the surety company for any of the payments which he was required to make.  It is, no doubt, true that the surety company may have inferred from the statements that the consideration was $40,000, that this money was to be paid in cash.  The agent of the surety company apparently did not inquire whether it was to be paid in cash at once or by installments, or by other means, and the reason is obvious.  It was a matter of total indifference to the surety company in what way the $40,000 was paid, because it retained no lien thereon, but trusted entirely to the credit of Mr. Knipe for the fulfillment of the conditions of the bond.  The surety company in this case was a paid surety.  The record does not show that any damage has accrued to the indemnity company by reason of the method in which the $40,000 was paid.  In the case of *Black Masonry & Contracting Co. v. National Surety Co.*, 61 Wash. 471, 112 Pac. 517, we said, at page 477:

"The general rule is, if the building owner advances to the builder more than he is entitled to under the contract, the surety will be released.  The rule rests upon two reasons. The one is that such advance deprives the surety of the security which the owner or principal contractor has agreed to hold for his benefit, and the loss of the inducement which otherwise would have operated on the contractor's mind to induce him to finish the work in accordance with the terms of his obligation."

Again, on page 479, we said:

"In all the cases decided by this court, and by all other courts holding that payment by the owner would not dis-

charge the principal, the facts have been such that no prejudice resulted by reason of such payments to the surety."

There is no claim that Mr. Osborne advanced to Mr. Knipe more or less than he was required under his contract. He was obligated to pay the full amount to Mr. Knipe. The surety company, as above stated, retained no interest therein. It follows, of course, that no prejudice resulted to the appellant by reason of the fact that the purchase price of the lot and the apartment house was paid to Mr. Knipe whether in money or other property.

Upon the facts in the case, we are satisfied that the surety company issued this bond for the completion of the building upon the credit of Mr. Knipe alone, and not upon the faith or credit of the contract which he had with the respondents Osborne, and for that reason, appellant should respond upon the bond.

The judgment appealed from is therefore affirmed.

ELLIS, C. J., FULLERTON, PARKER, and HOLCOMB, JJ., concur.